# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JUDICIAL WATCH, INC.,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　　Civil Action No. 12-2034 (RBW)<br>)<br>)<br>)<br>)<br>) |

## <u>MEMORANDUM OPINION</u>

The plaintiff, Judicial Watch, Inc., brings this civil action against the defendant, the

United States Department of State (the "Department"), under the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552.  <u>See</u> Complaint ("Compl.") at 1.  Currently pending before the Court

is the Defendant's Motion for Summary Judgment ("Def.'s Mot."), ECF No. 66.  Upon careful

consideration of the parties' submissions,[1] the Court concludes for the following reasons that it

must grant the Department's motion for summary judgment.

## I.     BACKGROUND

The Complaint asserts that the "[p]laintiff is a non-profit, educational foundation. . .

[that] seeks to promote integrity, transparency, and accountability in government and fidelity to

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Memorandum in Support of Motion for Summary Judgment ("Def.'s Mem."), ECF No. 66-1; (2) the Declaration of Eric F. Stein ("Stein Decl."), ECF No. 66-2; (3) the Defendant's Statement Under LCvR 7(h)(1) ("Def.'s Facts"), ECF No. 66-3; (4) the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Mem."), ECF No. 75; (5) the Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute and Plaintiff's Statement of Undisputed Material Facts ("Pl.'s Facts"), ECF No. 75; (6) the Declaration of Ramona R. Cotca ("Cotca Decl."), ECF No. 75-1; (7) the defendant's Reply in Support of Defendant's Motion for Summary Judgment ("Def.'s Reply"), ECF No. 78; and (8) the Second Declaration of Eric F. Stein ("Second Stein Decl."), ECF No. 78-1.

the rule of law." Compl. ¶ 3.  On September 24, 2012, the plaintiff submitted a FOIA request to

the Department seeking:

> [a]ll records concerning, regarding, or related to the advertisement produced by
> the U.S. embassy in Islamabad, entitled "A Message from the President of the
> United States Barack Obama and Secretary of State Hillary Clinton," intended to
> air in Pakistan.

Def.'s Facts ¶ 1;  Pl.'s Facts ¶ 1.  On December 19, 2012, the plaintiff filed this suit against the

Department, accord Compl. at 1, alleging that the Department was "unlawfully withholding

records requested by [the p]laintiff pursuant to [the FOIA,]" id. ¶ 12.  On March 14, 2013, the

parties filed a Joint Scheduling Statement representing that the parties "believe[d] this matter

[would] be resolved solely through the filing of dispositive motions[,]" but then proposed to file

additional statements based on the government's "process of searching for records responsive to

the FOIA request . . . ."  Joint Scheduling Statement at 1, ECF No. 10.  On May 15, 2013, the

parties filed a Supplemental Joint Scheduling Statement indicating that the Department would

continue to complete searches and make initial productions.  Supplemental Joint Scheduling

Statement at 1–2, ECF No. 12.  The parties subsequently filed six additional joint submissions

through October 8, 2014.

In their final joint status report in this series, the parties represented that they "ha[d]

reached an agreement in principle for the resolution of this case[.]"  Joint Status Report October

8, 2014 at 1, ECF No. 18.  "[T]he parties anticipate[d] final approval and dismissal shortly[.]"

Id.  On November 7, 2014, the parties "voluntarily agreed to dismiss [this] action with

prejudice," Def.'s Facts ¶ 4; accord Pl.'s Facts ¶ 4, and they filed a stipulation of dismissal, see

Stipulation of Dismissal with Prejudice, ECF No. 19 at 1,  which resulted in the Court issuing an

Order dismissing the case with prejudice, see Min. Order (Nov. 7, 2014).

On May 1, 2015, the parties jointly moved to reopen the case pursuant to Federal Rule of Civil Procedure 60(b)(2).[2]  See generally id.  According to the parties, "[i]n March 2015, media sources reported that former Secretary Clinton, and possibly other senior State Department officials, used [a] non-'state.gov' email account to conduct government business."  Id. at 2. Given that "[f]ormer Secretary Clinton provided the Department with approximately 55,000 pages of emails from her non-'state.gov' account[,]" the parties agreed that reopening the case was warranted.  See id. at 2.  In their joint motion, the parties agreed that: (1) "[the p]laintiff [would] not seek to amend the [C]omplaint, (2) the plaintiff would not "challenge the [ ] redactions to [any] previously released documents[,]" (3) the [Department] would search "the full set of agency records from the emails provided to the Department by former Secretary Clinton . . . for any records responsive to [the p]laintiff's FOIA request[,]" and (4) the parties would "discuss the records and the search and [would] determine if the matter can once again be informally resolved or if summary judgment briefing regarding the documents or the search is required."  Id. at 2–3.

---

[2] The parties would later represent that, preceding the submission of their stipulation of dismissal,

> [t]he Department searched for potentially responsive documents in twelve components, including the Office of the Secretary, reasonably expected to have responsive records.  By October 2013, the Department had produced over 700 pages of records, many of which contained redactions.  The Department also provided [the p]laintiff with a [twenty-seven]-page, [eighty-eight]-numbered paragraph [d]raft Vaughn index for certain redactions identified by [the p]laintiff.  Subsequently, in September 2014, following [the p]laintiff's review of the [d]raft Vaughn index, the Department provided additional information to [the p]laintiff as well as a nine-page, [seventeen]-numbered paragraph supplemental [d]raft Vaughn index.  Following that production, the parties agreed to settle the case[.]

Joint Motion to Reopen Case Under Federal Rule Civil Procedure 60(b)(2) (the "joint motion" or "Joint Mot.") at 1–2, ECF No. 21.

The Department completed its processing of the additional emails provided by former Secretary Clinton on February 29, 2016.  Def.'s Facts ¶ 6; <u>accord</u> Pl.'s Facts ¶ 6.  According to the Department,

> [it] determined that, in addition to the Clinton emails, the following records systems were also reasonably likely to contain records responsive to [the p]laintiff's FOIA request and voluntarily agreed to search them: 1) electronic records retired by the Executive Secretariat, which consist of shared electronic office folders that were available to employees within the Office of the Secretary during former Secretary Clinton's tenure, as well as individual electronic folders of files belonging to Cheryl Mills, Huma Abedin, and Jacob Sullivan; 2) the ['] state.gov['] emails of Philippe Reines, and 3) the non-[']state.gov['] emails provided to the Department by [ ] Mills, [ ] Abedin, [ ] Sullivan, and [ ] Reines.

Def.'s Facts ¶ 7.  After searching the Clinton emails and the identified records systems, the Department informed the plaintiff that "no responsive records were retrieved."  Def.'s Facts ¶ 8; <u>accord</u> Pl.'s Facts ¶ 8;[3] <u>see also</u> Def.'s Facts ¶¶ 9–13 (detailing the methodology employed to search for responsive documents).

On June 21, 2016, the Court issued an order staying further litigation of this case pending the completion of discovery in two similar cases pending before other members of this Court, <u>see generally</u> <u>Jud. Watch, Inc. v. U.S. Dep't of State</u>, Civ. Action No. 13-1363 (EGS) ("Judge Sullivan's similar case"); <u>Jud. Watch, Inc. v. U.S. Dep't of State</u>, Civ. Action No. 14-1242 (RCL) (Judge Lamberth's similar case"), in order "[t]o avoid duplicative discovery and unnecessary expenditure of public funds[.]" <u>See</u> Order at 2–3 (June 21, 2016), ECF No. 40.  In those cases, the plaintiff has taken numerous depositions and "has received responses to multiple interrogatories[.]"  Def.'s Facts ¶ 14; <u>accord</u> Pl.'s Facts ¶ 14.

---

[3] The plaintiff disagrees with this assertion, as it "denies that [the Department], through counsel, informed [the p]laintiff that it searched the [']state.gov['] email account of [ ] Reines" and states that "[b]oth emails from agency counsel, dated March 28, 2016[,] and March 8, 2016, did not reference any search undertaken by the [ ] Department of the [']state.gov['] email account or PST file of [ ] Reines." Pl.'s Facts ¶ 8.  However, the Department now represents that it did, in fact, search "the [']state.gov['] emails of [ ] Reines."  Def.'s Facts ¶ 7 (citing Stein Decl. ¶ 9).

On January 31, 2020, the Court vacated the stay in this case, see Order at 1 (Jan. 31, 2020), ECF No. 65, in light of the parties' representations that Judge Sullivan's similar case had "been dismissed by joint stipulation of the parties[,]" and that, in Judge Lamberth's similar case, "discovery [was] largely completed except for a small number of requests [that were still] pending[,]" Joint Status Report at 1 (Jan. 30, 2020), ECF No. 64.  The Court further ordered the Department to "file its motion for summary judgment on or before March 10, 2020," Order at 1 (Jan. 31, 2020), ECF No. 65, which the Department timely filed, see generally Def.'s Mot.  In response, on March 31, 2020, the plaintiff filed a motion for discovery in lieu of responding to the Department's summary judgment motion.  See generally Plaintiff's Motion for Discovery Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, ECF No. 67.  The Court denied the plaintiff's motion for discovery, concluding that "the plaintiff's alleged need for discovery [was] speculative and insufficient to delay summary judgment briefing any further.  Order at 3 (July 17, 2020), ECF No. 73.  Accordingly, the plaintiff filed its opposition to the Department's summary judgment motion, id. at 4, and the Department filed its reply to the plaintiff's opposition.

## II.    STANDARD OF REVIEW

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party.  See Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).  The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 255 (1986).  The non-moving party, however, cannot rely on "mere allegations or denials," Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248), but must instead present specific facts "such that a reasonable [factfinder] could return a verdict for the non[-]moving party[,]" Grosdidier v. Broad. Bd. of Governors, Chairman, 709 F.3d 19, 23 (D.C. Cir. 2013) (quoting Anderson, 477 U.S. at 248).  Thus, "[c]onclusory allegations unsupported by factual data will not create a triable issue of fact."  Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin., 185 F.3d 898, 908 (D.C. Cir. 1999) (Garland, J., concurring) (alteration in original) (quoting Exxon Corp. v. Fed. Trade Comm'n, 663 F.2d 120, 127 (D.C. Cir. 1980)).  If the Court concludes that "the non[-]moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Thus, when "ruling on cross-motions for summary judgment, the [C]ourt shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed."  Shays v. Fed. Election Comm'n, 424 F. Supp. 2d 100, 109 (D.D.C. 2006).

"FOIA cases are typically resolved on a motion for summary judgment."  Ortiz v. U.S. Dep't of Just., 67 F. Supp. 3d 109, 116 (D.D.C. 2014); see also Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  The "FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions."  Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001). Courts will grant summary judgment to the agency in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA

requester." Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C.

2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). Thus,

in a lawsuit brought to compel the production of documents under the FOIA, "an agency is

entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each

document that falls within the class requested either has been produced . . . or is wholly[, or

partially,] exempt from [disclosure].'" Students Against Genocide, 257 F.3d at 833 (first

alteration in original) (quoting Goland v. Cent. Intelligence Agency, 607 F.2d 339, 352 (D.C.

Cir. 1978)). However, "[t]he burden upon the requester [for summary judgment] is merely 'to

establish the absence of material factual issues before a summary disposition of the case could

permissibly occur.'" Pub. Citizen Health Research Grp., 185 F.3d at 904–05 (quoting Nat'l

Ass'n of Gov't Emps. v. Campbell, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

### III.    ANALYSIS

The Department argues that it "has fully satisfied its obligations under the [FOIA] and is

entitled to summary judgment." Def.'s Mot. at 1. In response, the plaintiff asserts that summary

judgment is inappropriate because the Department has "fail[ed] to demonstrate that it met its

search obligation under [the] FOIA." Pl.'s Mem. at 5. Furthermore, the plaintiff contends that

the Department "inaccurate[ly] and misleading[ly] claim[s] that this case was reopened only for

the limited purpose to search . . . 'newly acquired' emails," and insists that the Court must

review the adequacy of the search completed in response to the plaintiff's request prior to this

case's dismissal. Id. The Court will address each of these issues in turn.

### A.    Whether the Plaintiff May Challenge the Sufficiency of the Search Completed Prior to the November 7, 2014 Dismissal

The plaintiff argues that the reopening of this case permits it to challenge the sufficiency

of the Department's search conducted prior to the 2014 dismissal with prejudice of this case (the

"pre-dismissal search"). <u>See</u> Pl.'s Mem. at 5–6.  The plaintiff points out that "the Court never

limited the case in such a way, nor did [the p]laintiff ever agree to limit its claims in this case so

drastically and exclude the [pre-dismissal] search from its right to relief." <u>Id.</u> at 5–6.  However,

the Department maintains that the plaintiff's decision to dismiss the case in 2014 "relinquish[ed]

its right to challenge the search already conducted" and "waived any arguments [it] might have

reasonably anticipated as to whether [the Department] should have searched material from

different file systems or from different custodians[]" prior to the case's dismissal.  Def.'s Reply

at 2 (internal quotation marks omitted).  The Court agrees that, due to the nature of the dismissal

and the reason this case was reopened—and upon consideration of the parties' joint status

reports, the stipulation of dismissal, and the joint motion to reopen the case—the plaintiff waived

its right to challenge the sufficiency of the Department's pre-dismissal search. <u>See</u> <u>Am. Ctr. for</u>

<u>L. & Just. v. United States Dep't of Just.</u>, 325 F. Supp. 3d 162, 167 (D.D.C. 2018); <u>cf.</u> <u>United</u>

<u>States v. Burch</u>, 156 F.3d 1315, 1321 (D.C. Cir. 1998) ("[I]n the absence of an affirmative

indication that Congress intended to preclude or to limit the waiver of statutory protections . . .

voluntary agreements to waive [those] protections are presumptively enforceable[.]"); <u>Molton,</u>

<u>Allen & Williams, Inc. v. Harris</u>, 613 F.2d 1176, 1179 (D.C. Cir. 1980) ("The common law

concept of waiver . . . includes inferences from the words and actions of the parties."); <u>Pub.</u>

<u>Emps. for Env't Resp. v. U.S. Env't Protection Agency</u>, 926 F. Supp. 2d 48, 54 (D.D.C. 2013)

(concluding a provision in a settlement agreement enforceable to bar a subsequent FOIA

request).

## 1.      The Parties' Joint Status Reports

The Department contends that the "multiple [j]oint [s]tatus [r]eports" in this case

represented to the Court "that [the p]laintiff might potentially challenge certain redactions

applied to the documents[ it had been provided by the Department,] but made no mention of any challenge to the scope of [the] D[epartment]'s searches." Def.'s Mem. at 3. The Court agrees that the plaintiff's representations through the parties' joint status reports lean in favor of waiver.

The plaintiff routinely emphasized its potential challenges to redactions made to documents produced through the pre-dismissal search, rather than the sufficiency of the underlying searches themselves. In the parties' November 15, 2013 report, the plaintiff represented that it was "in the process of reviewing the [Department's] production and [ ] redactions[, and a]fter that process is complete, plaintiff intends to inform the [ ] Department of any redactions that it disputes." Joint Status Report at 2 (Nov. 15, 2013), ECF No. 14. In the parties' subsequent submission, the plaintiff endeavored to "review [the Department's] draft Vaughn index and potentially confer with the [ ] Department about the redactions." Joint Status Report at 2 (Mar. 14, 2014), ECF No. 15. Furthermore, the plaintiff joined the reports' optimism that issues that might require the Court's intervention were being progressively informally addressed. Indeed, the parties indicated well-ahead of their eventual stipulated dismissal that they were "narrow[ing] the issues which must be presented to this Court for adjudication." Joint Status Report at 1 (July 8, 2014), ECF No. 16. These issues were further narrowed in the parties' September 8, 2014 submission. See Joint Status Report at 2 (Sept. 8, 2014), ECF No. 17 ("In light of . . . recent communication, [the] plaintiff requests an opportunity to review [the additional] materials [provided by the Department]. With the issues thusly narrowed, the parties do not anticipate that much additional time should be needed to ascertain whether there will be a need to brief the presently unresolved issues in [this] matter."). Finally, in their October 8, 2014 submission, the parties revealed that they had "reached an agreement in principle for the resolution of this case." Joint Status Report at 1 (Oct. 8, 2014), ECF No. 18.

The Court is compelled to conclude that the record in this case supports the government's position because "when the parties make representations . . . about which issues remain outstanding, they may fairly be held to those [ ] representations.  See Am. Ctr. for L. & Just., 325 F. Supp. 3d at 168 (D.D.C. 2018).

2.   The Stipulation of Dismissal

The Court also agrees with the Department that the plaintiff's waiver is supported by the plaintiff's decision to "voluntarily decline[] to raise any challenges to the scope of the [ ] Department's [pre-dismissal] search[] when this case settled in 2014."  See Def.'s Mem. at 4. The parties' Stipulation of Dismissal with Prejudice (the "stipulation"), ECF No. 19, which the Court approved, is instructive because the stipulation dismissed all of the challenges in the plaintiff's Complaint, see Min. Order (Nov. 7, 2014).

Under Rule 41(a)(1)(A)(ii), voluntary dismissal by the plaintiff is appropriate where the plaintiff provides "a stipulation of dismissal signed by all parties who have appeared."  Fed. R. Civ. P. 41(a)(1)(A)(ii).  "Indeed, litigants can at any time" use this Rule to "dismiss a civil action in its entirety, with prejudice[.]"  Am. Ctr. for Law & Justice, 325 F. Supp. 3d at 168. Rule 41(a)(1)(A)(ii) therefore exemplifies the Federal Rules' recognition that parties may "agree to narrow the issues in dispute or [ ] give up important procedural rights."  See id.  Thus, "where sophisticated parties to a FOIA case have agreed to narrow the issues"—even in their entirety, as is apparent from a Rule 41(a)(1)(A)(ii) stipulation of dismissal with prejudice—"they generally may be held to their agreement under traditional waiver principles."  See id.

The plaintiff argues that "the Court never limited the case . . . , nor did [the p]laintiff ever agree to limit its claims so drastically . . . ."  Pl.'s Mem. at 5–6.  However, it is clear that the plaintiff agreed to a dismissal that would have the same effect as a waiver and a final judgment

10

on the merits.  See Doherty v. Turner Broad. Sys., Inc., Civ. Action No. 20-134, 2021 WL

326447, at *3 (D.D.C. Feb. 1, 2021) (noting that "stipulations of dismissal[s] with prejudice in [ ]

two prior suits constitute[d] a final judgment on the merits").

### 3.    The Joint Motion to Reopen the Case

As the parties' joint motion demonstrates in several respects, this case was plainly

reopened for the explicit purpose of reviewing new potential sources of information relevant to

the plaintiff's underlying FOIA request.  First, the joint motion was based on "newly discovered

evidence[,]" Joint Mot. at 1 (citing Fed. R. Civ. P. 60(b)(2)), specifically, "55,000 pages of

emails from [Former Secretary Clinton's] non-'state.gov' account[,]" id. at 2.  Second, the

parties agreed that "[t]he Department [had previously] searched for potentially responsive

documents in twelve components . . . reasonably expected to have responsive records[,]" and that

"[f]ollowing [the Department's] production, the parties agreed to settle the case[.]"   Id. at 1–2

(emphasis added); see footnote 2, supra.  Third, the parties also agreed that "[the p]laintiff

[would] not seek to amend the complaint [or] challenge [ ] any redactions to previously released

documents."  Id. at 2.  These circumstances all indicate that the plaintiff was aware that the case

would be reopened for the limited purpose of a new search for records, not to relitigate already

settled matters.

### 4.    The Plaintiff's Purported Reservation of the Right to Challenge the Sufficiency of the Pre-Dismissal Search

The plaintiff argues that it "reserved all its rights to relief specific to the agency's search

and would make its case to the Court for all relief deemed necessary."  Pl.'s Mem. at 6.  To

demonstrate this purported reservation, the plaintiff notes that it "intentionally deleted [ ]

language proposed by [the Department] in the [parties'] [j]oint [m]otion . . . that [the p]laintiff

would not 'challenge the adequacy of the prior search."  Id.  Specifically, the plaintiff references

"communicat[ions] with [the Department] prior to filing the [j]oint [motion,] . . . that [the p]laintiff was reserving all its rights to relief specific to the agency's search and would make its case to the Court for all relief deemed necessary.  Id. (citing Pl.'s Mem., Exhibit ("Ex") 4 (Email from Chris Fedeli to Marsha Edney (Mar. 28, 2016)).  Indeed, the plaintiff's counsel discussed in the email a redlined draft of the joint motion, which stated that the plaintiff "would[ not] challenge the adequacy of the [pre-dismissal] search," noting the plaintiff could not "agree to this change."  See id., Ex. 4 (Email from Chris Fedeli to Marsha Edney) at 1.

The plaintiff's argument nonetheless fails for several reasons.  First, the purported reservation—expressed while the parties were drafting their joint motion—was made well-after the parties stipulated to dismiss this case with prejudice as described above.  Second, the plaintiff's counsel's redline comment noted that the plaintiff had "no idea" whether the adequacy of the searches would be at issue based on the Department's forthcoming disclosure obligations.  See id., Ex. 4 (Email from Chris Fedeli to Marsha Edney) at 1.  As the Department's counsel noted in that exchange, the new "search[] retrieved no responsive records to [the plaintiff's] FOIA request."  Id., Ex. 4 (Email from Chris Fedeli to Marsha Edney) at 1.  Therefore, no new information would have been available to the plaintiff that might newly impugn the Department's pre-dismissal search.  The plaintiff also nevertheless agreed to the joint motion's language indicating that the pre-dismissal search was completed in components where responsive documents were "reasonably expected[.]"  See Joint Mot. at 1.  And because the Court recognizes that the Department's new search revealed no records responsive to the plaintiff's request, all produced information available to the plaintiff now was also available when it first agreed to dismiss this matter with prejudice.  See Pl.'s Facts ¶ 8 (not disputing that

the Department's represented that it retrieved no responsive records from its post-dismissal search).

Moreover, the Court is mindful of the implications that may occur from permitting the plaintiff to now question the reasonableness of the pre-dismissal search.  Allowing such a challenge would inevitably chill the government's willingness to jointly agree to dismiss or reopen cases when similar circumstances arise.  If a government agency completes a search that the plaintiff later agrees merits a dismissal of the matter with prejudice, but the government is subject to having the search subsequently challenged based on something unrelated to the earlier search, the government would be disincentivized to act as it did here.  In concluding that FOIA rights can be waived, the District of Columbia Circuit in Price v. U.S. Department of Justice Attorney Office, 865 F.3d 676 (D.C. Cir. 2017), shared similar concerns in discussing the implications of failing to recognize the waiver implications of a FOIA settlement:

> Under [the] view [that FOIA rights cannot be waived], FOIA claims would become practically impossible to settle. Suppose [a government agency] denies a person's request for documents, and the person sues under [the] FOIA. Because litigation is uncertain and costly, settlement talks ensue.  The [agency] offers to give him document X while continuing to withhold from him documents Y and Z. The requester accepts the [agency]'s offer and voluntarily dismisses his suit. But a month later, buyer's remorse sets in and he asks the [agency] for documents Y and Z.  Presumably, the [agency] would deny his request on the ground that, just last month, he signed on to a settlement in which he agreed not to receive those documents.  If [it] were correct that the [agency] would be barred from denying his request unless it could invoke one of the statutory exemptions, the promise made in the settlement would be meaningless.  If that were the law, the agency would never have settled with him to begin with.  Indeed, the agency would never settle with anybody.  FOIA settlements would always be—from the government's perspective—meaningless. That outcome is absurd.

Id. at 680–681.

In sum, the Court must conclude that the plaintiff's attempts to revive settled issues fail in light of the circumstances leading up to and surrounding the prior dismissal with prejudice of this

case.  As a result of the parties' successful collaborative effort to narrow the pool of disputed

issues prior to this case's dismissal, the plaintiff's ultimate stipulation to dismiss the case

following the completion of the pre-dismissal search, and the necessarily limited scope of the

reopening of the case, the plaintiff has waived its right to challenge the pre-dismissal search.

**B.     The Adequacy of the Department's Post-Dismissal Search**

Having concluded that it need only consider the Department's search for records that was

conducted following the reopening of this case, the Court will now address the sole remaining

issue in this case, namely, whether that search was adequate.

An agency "fulfills its [search] obligations under [the] FOIA if it can demonstrate beyond

material doubt that its search was reasonably calculated to uncover all relevant documents."

Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011)

(citations and internal quotation marks omitted).  The agency may submit affidavits or

declarations to explain the method and scope of its search, see Perry v. Block, 684 F.2d 121, 127

(D.C. Cir. 1982), and such affidavits or declarations are "accorded a presumption of good faith,

which cannot be rebutted by purely speculative claims about the existence and discoverability of

other documents," SafeCard Servs., Inc. v. Secs. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C.

Cir. 1991) (citation and internal quotation marks omitted).  Indeed, courts assess the adequacy of

a search "not by the fruits of the search, but by the appropriateness of the methods used to carry

out the search."  Media Rsch. Ctr. v. U.S. Dep't of Just., 818 F. Supp. 2d 131, 137 (D.D.C. 2011)

(quoting Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003)(internal

quotation marks omitted)).

The Department's declaration, provided by Eric F. Stein, the Department's Director of

the Office of Information Programs and Services ("IPS"), Stein Decl. ¶ 1,

> describes the supplemental searches conducted after this case was re[]opened,
> including searches of 1) email records of former Secretary Clinton, 2) electronic
> records retired by the Executive Secretariat, 3) email records of Phillippe Reins,
> Cheryl Mills, Huma Abedin, and Jacob Sullivan, and 4) the collection of
> documents provided to the Department by the Federal Bureau of Investigation
> ("FBI") in July and August of 2016[.]

Stein Decl. ¶ 12.  The Department represents that its post-dismissal search for responsive records

proceeded as follows: (1) regarding former Secretary Clinton's email records, a knowledgeable[4]

management analyst "conducted a full-text search of the [ ] emails using" twelve relevant terms,

including the name of the video sought in the plaintiff's FOIA request, id. ¶ 13; (2) regarding the

electronic records retired by the Executive Secretariat, a knowledgeable IPS Government

Information Specialist conducted "a full-text search of these electronic records" using several

other relevant terms, id. ¶ 15; (3) regarding the Mills, Abedin, Sullivan, and Reines email

records, a knowledgeable IPS Government Information Specialist "conducted a search of the

non-[']state.gov['] records provided to the Department by [ ] Mills, [ ] Abedin, [ ] Sullivan, and

[ ] Reines, as well as the [']state.gov['] email account of [ ] Reines[]" by means of "a full-text

search of the[ ] electronic records using" terms identical to those used for the Executive

Secretariat search, id. ¶ 16; and (4) regarding the documents provided by the FBI, a

knowledgeable IPS Government Information Specialist "conducted a full-text search of these

electronic records using" terms identical to those used for the Executive Secretariat searches and

the Mills, Abedin, Sullivan, and Reines searches, id. ¶ 18.  The Department further represents

that "the substantial discovery" conducted in Judge Sullivan's and Judge Lamberth's similar

cases "regarding [the Department's] email and preservation practices[]" revealed no "additional

locations where records responsive to [the p]laintiff's FOIA request are likely to be found.  Id. ¶

---

[4] The Court uses the term "knowledgeable" here to refer to an official "with knowledge of both the [plaintiff's] request and the relevant records systems[.]"  See Stein Decl. ¶¶ 13, 15, 16, 18.

19.  The Department also notes that, beyond the search of former Secretary Clinton's emails, which it engaged in pursuant to the joint motion, all other searches were done "voluntarily."  See id. ¶ 20.  Ultimately, the Department "located no responsive records."  Id.

The Court concludes that the Department's "declaration sufficiently explains the type of searches conducted, the search terms used, and explains that all files likely to contain responsive materials were located and searched."  See Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs, 405 F. Supp. 3d 127, 139 (D.D.C. 2019) (citing Walston v. U.S. Dep't of Def., 238 F. Supp. 3d 57, 64 (D.D.C. 2017)).  "It is elementary that an agency responding to a FOIA request is simply required to conduct[] a search reasonably calculated to uncover all relevant documents."  In re Clinton, 973 F.3d 106, 116 (D.C. Cir. 2020) (internal quotation marks omitted, emphasis and alteration in original).  Therefore, the Department's "FOIA search need not "actually uncover[ ] every document extant." SafeCard Servs., Inc., 926 F.2d at 1201.  In fact, the Court's assessment of the adequacy of the search is a "narrow inquiry[,]" In re Clinton, 973 F.3d at 117, and, here, the Department's declaration demonstrates "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," Nation Mag. Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995) (internal quotation marks omitted).

The plaintiff argues that the Department's declaration "fails to specify whether the [']state.gov['] email accounts or PST files of these custodians, with the exception of Philippe Reines, were part of the agency's supplemental search of the retired records of the Executive Secretariat."  Pl.'s Mem. at 7.  The plaintiff further asserts that the Department "does not explain whether the state.gov email accounts or PST files of Mills, Abedin, and Sullivan were part of the supplemental search of the electronic files belonging to these custodians[,]" id., and that

"[b]efore the Court can rule that [the Department] has fulfilled its legal obligation to conduct an adequate and reasonable search, based on the facts and the record available, [the Department] must also search, at a minimum, the PST files or [']state.gov['] email accounts of" eight enumerated individuals, id. at 9.

However, an agency's search need not be exhaustive, see Miller v. U.S. Dep't of State, 779 F.2d 1378, 1383 (8th Cir. 1985), nor perfect, see DiBacco v. U.S. Army, 795 F.3d 178, 191 (D.C. Cir. 2015) ("[A]dequacy— not perfection—is the standard that [the] FOIA sets.").  And here, based on the record outlined above, the Court is satisfied that the purported deficiencies identified by the plaintiff "do not call into question the adequacy of the search . . . ."  See In re Clinton, 973 F.3d at 116.   Furthermore, the plaintiff's FOIA request—which the Court agrees "is extremely narrow, concerning a single advertisement[,]" see Def.'s Reply at 9—in no way necessitates the exhaustive measures the plaintiff demands.[5]  The Department acted sufficiently when it searched the new email records with a consistent focus on either the actual video the plaintiff sought, Stein Decl. ¶ 13, or terms including or otherwise associated with Mills, Abedin, Sullivan, and Reines, id. ¶¶ 15–20.

Accordingly, because the Court concludes that the Department conducted an adequate search for responsive documents following the reopening of this case, the Court will grant the Department's motion for summary judgment.

---

[5] The Court is also takes note of the Circuit's August 31, 2020 decision granting former Secretary Clinton's petition for mandamus, which "request[ed] an order 'directing the district court [in Judge Lamberth's similar case] to deny [the plaintiff's] request to depose' [her]" as part of the plaintiff's continued attempts to gain further information from the former Secretary's emails.  See In re Clinton, 973 F.3d at 111.  In reaching its decision to preclude the plaintiff's efforts, the Circuit found that the plaintiff "does not in fact want the information it purports to seek and has already been afforded extensive discovery . . . ."  Id. at 120.  The Circuit also noted that the plaintiff "also has available to it a voluminous public record" regarding the "topics" about which the plaintiff sought to conduct further discovery regarding former Secretary Clinton's emails, and her use of a private email server.  Id.  With these pronouncements in mind, the Court must similarly conclude that the record in this case "underscore[s] . . . the appropriateness of turning the page on the" FOIA request that is the subject of this litigation.  See id. at 121

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that the Department has completed a sufficient search for records responsive to the plaintiff's FOIA request.  Accordingly, the Court must grant the Department's motion for summary judgment.

**SO ORDERED** this 2nd day of June, 2021.[6]

REGGIE B. WALTON
United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.